United States District Court
Southern District of Texas

**ENTERED**

November 22, 2019

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICARDO LLAMAS<br>*Plaintiff*, | § | |
| v. | § | Civil Action No. 4:19-CV-1029 |
| HARRIS COUNTY, TEXAS, AND DEPUTY<br>CHRISTOPHER MOOK,<br>*Defendants*. | § | |

## MEMORANDUM AND RECOMMENDATION

This civil rights case is before the court on Defendants' Motions to Dismiss. Dkts. 12, 13.[1]  Having reviewed the parties' submissions and the law, the court recommends that Defendants' motions be granted.

### I.     Background

Plaintiff filed this action alleging claims under 42 U.S.C. § 1983 for excessive force and malicious prosecution or wrongful detention against Harris County, Texas and Christopher Mook, a Harris County Deputy Sheriff.  Dkt. 10 (Amended Complaint). Plaintiff alleges that on March 26, 2017, he was driving a friend's Jeep in a flea market parking lot when Deputy Mook fired multiple shots at the Jeep.  *Id.* at ¶ 9.  According to the Amended Complaint, "[m]ost of the bullets (at least 6) were fired, and struck the Jeep, when Deputy Mook . . . was behind and beside the Jeep as it drove away at low speed. . . . One bullet entered the rear fender of the Jeep and . . . struck [Plaintiff] in the back." *Id.* at ¶ 10.  Plaintiff also alleges he "did not drive at Deputy Mook" or "assault him in any manner."  *Id.* at ¶ 11.  As a result of the events on March 26, Plaintiff was charged with

---

[1] The district court referred this matter to this magistrate for report and recommendation.  Dkt. 11.

felony aggravated assault of a public servant and convicted by a jury of misdemeanor deadly conduct.  *Id.* at ¶ 12.

Plaintiff asserts in this suit that Deputy Mook's use of force on March 26, 2017 was objectively unreasonable; that Plaintiff was wrongfully detained and prosecuted for felony aggravated assault of a public servant based on Deputy Mook's false statements; and that Harris County had a policy of ratifying the use of excessive force by its officers.

Defendants have moved to dismiss all of Plaintiff's claims as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  Defendant Harris County has also moved to dismiss on the alternative grounds that Plaintiff's malicious prosecution claim is barred by *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) and that Plaintiff has failed to state a claim under *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691 (1978).  Defendant Mook joins in the alternative ground for dismissal of the malicious prosecution claim pursuant to *Castellano,* and moves to dismiss the claims against him based on qualified immunity.

## II.     Motion to Dismiss Standards

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).  In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.  *Alexander v. AmeriPro Funding, Inc.*, 48 F.3d 68, 701

(5th Cir. 2017) (citing *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  However, the court does not apply the same presumption to conclusory statements or legal conclusions.  *Iqbal*, 556 U.S. at 678-79.

Generally, the court may consider only the allegations in the complaint and any attachments thereto in ruling on a Rule 12(b)(6) motion.[2]  If a motion to dismiss refers to matters outside the pleading it is more properly considered as a motion for summary judgment.  *See* FED. R. CIV. P. 12(d).  However, the court may take judicial notice of public documents, and may also consider documents a defendant attaches to its motion to dismiss under 12(b)(6) if the documents are referenced in the plaintiff's complaint and central to the plaintiffs' claims.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000); *King v. Life Sch.*, 809 F. Supp. 2d 572, 579 n.1 (N.D. Tex. 2011); *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir.2007).

## III.   Analysis

### A.  Plaintiff's § 1983 claims are barred by *Heck v. Humphrey*.

In *Heck v. Humphrey*, the Supreme Court held that a claim for damages that renders a conviction or sentence invalid was not cognizable under § 1983 unless the conviction or sentence had been reversed, expunged, declared invalid or called into question by a federal court's issuance of a writ of habeas corpus.  *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).  The Supreme Court also held that if a judgment in favor of the plaintiff would *not*

---

[2] Paragraph 9 of Plaintiff's Amended Complaint, describing where bullets struck the Jeep, says "See Exhibits 1 and 2," which are presumably pictures of bullet holes in the Jeep.  There are no exhibits attached to the Amended Complaint as docketed.  *See* Dkt. 10.  There are two pictures attached to Plaintiff's response to the motions to dismiss. *See* Dkts. 14-1, 14-2.  The pictures show bullet holes in exterior driver's side of a Jeep, and one bullet hole in the bottom of a seat. *Id.*  Neither picture depicts a bullet hole in the rear fender, as described in ¶9.

"demonstrate the invalidity of any outstanding criminal judgment against the plaintiff," the § 1983 action could proceed absent some other bar. *Id.* at 487.  Plaintiff acknowledges in his Amended Complaint that he was convicted for misdemeanor deadly conduct and fails to allege that the conviction has been invalidated in any way.   Therefore, this court "must consider whether a judgment in favor of the plaintiff [on his § 1983 claims] would necessarily imply the invalidity of his conviction" for deadly conduct. *Id.* at 487.

### 1.  Excessive force

A plaintiff asserting an excessive force claim under § 1983 must show he "suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force was objectively unreasonable." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004).  The determination of whether the use of force was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (setting forth what have become known as the "*Graham* factors").  Thus, a judgment in favor of Plaintiff on his § 1983 excessive force claim would require a finding that the force used by Deputy Mook was "excessive to the need" and was "objectively unreasonable."

Plaintiff cannot show that Deputy Mook's use of force on March 26, 2017 was "excessive to the need" or "objectively unreasonable" without calling into question the validity of Plaintiff's conviction for deadly conduct.  Public records submitted by the Defendants establish that a jury found Plaintiff guilty of the misdemeanor crime of deadly

4

conduct. Dkt. 12-1 at 12. The jury charge in Plaintiff's criminal trial instructed jurors that a guilty verdict on the deadly conduct charge required a finding that Plaintiff "unlawfully, [and] recklessly engage[d] in conduct that placed Christopher Mook in imminent danger of serious bodily injury by driving a motor vehicle in the direction of Christopher Mook." *Id.* at 4; TEX. PENAL CODE §22.05(a) ("A person commits an offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury.").

The jury in the criminal case found that Plaintiff "placed Christopher Mook in imminent danger of serious bodily injury…." Dkt. 12-1 at 4. "Use of deadly force is not unreasonable when an officer [has] reason to believe that the suspect poses a threat of serious harm to the officer or others." *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003) (citing *Tennessee v. Garner*, 471 U.S. 1 (1985)). Therefore, a finding in a § 1983 action that Deputy Mook's use of force was objectively unreasonable would contradict the jury's finding in the criminal case that Deputy Mook was "in imminent danger of serious bodily injury" and would call into question the validity of Plaintiff's criminal conviction.

Plaintiff's Amended Complaint alleges that he "did not drive at []or assault Deputy Mook in any manner" nor did he pose any threat or danger to the police, and therefore Mook's use of force was excessive to the need and objectively unreasonable. Dkt. 10 at ¶¶ 11, 114. Where a plaintiff challenges that he engaged in the conduct underlying his conviction, as Plaintiff does in the allegations quoted above, *Heck* bars an excessive force claim related to the circumstances of his arrest and conviction. *See Diagre v. City of Waveland, Miss.*, 549 F. App'x 283, 286-87 (5th Cir. 2013) (Plaintiff's allegations that he did not physically resist or assault officers "relate to the entire arrest encounter, and not

merely a discrete part of it.  The result is dismissal under *Heck*." (internal citation omitted));

*Walter v. Horseshoe Enter.*, 483 F. App'x 884, 887 (5th Cir. 2012) ("[A]ppellants' claims

are not derived from distinct incidents.  Their convictions for resisting arrest and their claim

of use of excessive force stem from a single interaction."); *Walker v. Munsell*, 281 F. App'x

388, 390 (5th Cir. 2008) (Appellant's claim was not that the officers used excessive force

after he stopped resisting, but that he did not resist. "This type of excessive force claim is

. . . barred by *Heck* in our circuit.").

Plaintiff argues that *Heck* does not bar his claim because the excessive force he

complains of in this § 1983 case is temporally distinct from the deadly conduct for which

he was convicted.  If "the factual basis for [a criminal] conviction is temporally and

conceptually distinct from the excessive force claim[,]" a favorable judgment on the § 1983

claim does not call into question the validity of the criminal conviction.  *Bush v. Strain*,

513 F.3d 492, 498 (5th Cir. 2008); *see also Curran v. Aleshire*, 800 F.3d 656, 661 (5th Cir.

2015) ("if enough time elapsed between the battery [on the officer] and the use of force [by

the officer] that a reasonable officer would have realized [plaintiff] was no longer

resisting," then the excessive force claim may not be barred).  Plaintiff alleges a temporal

break between his deadly conduct and Mook shooting him is evidenced by the fact that one

of Deputy Mook's shots hit him in the back, indicating that he was driving away from

Mook at the time of that shot.  Dkt. 14 at 21-22.

Plaintiffs "temporal break" argument does not save his claims in this case.  Unlike

the plaintiff in *Bush,* Plaintiff does not allege that Mook used excessive force after Plaintiff

was restrained or arrested.  Instead, the events of March 26, 2017 were part of a single

violent encounter during which Plaintiff was driving a jeep and Mook shot at him.  *See DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656-57 (5th Cir. 2007) ("There is no alternative pleading or theory of recovery that would allow this claim for excessive force to proceed without interfering with the Texas proceeding against DeLeon for aggravated assault of an officer.  Rather it is presented as a single violent encounter throughout which [the officer] used excessive force."); *see also White v. Howell*, No. 4:12-CV-204, 2013 WL 5503706, at *8 (S.D. Miss. Sept. 30, 2013) ("The temporal and conceptual aspects of the facts in *Bush*, make it distinguishable from this one.  In *Bush*, the alleged use of excessive force arguably occurred *after* and not *before* the plaintiff ceased the criminal conduct which led to her underlying conviction (resisting arrest)." (emphasis in original)); *Fetty v. City of Baton Rouge*, No. CV 18-945, 2019 WL 1917243, at *2 (M.D. La. Apr. 30, 2019) ("when there is no temporal and conceptual distinction between the factual basis for the conviction and the excessive force claim, that is, when the complained of use of force is applied during or simultaneously with the arrest, *Heck* applies.").  Plaintiff has presented no Fifth Circuit authority applying the "temporal break" theory under facts analogous to his allegations in this case.

## 2.  Malicious prosecution

Plaintiff's malicious prosecution claim is based on allegations that Deputy Mook made false statements in his incident report "about plaintiff's location when plaintiff was sho[t] as well as how Mook was positioned during the shooting," and therefore no probable cause existed for the charges against him.  Dkt. 10 at ¶ 116.  These allegations conflict with the jury's finding that Plaintiff "unlawfully, [and] recklessly engage[d] in conduct that

placed Christopher Mook in imminent danger of serious bodily injury by driving a motor vehicle in the direction of Christopher Mook."   Therefore, Plaintiff's success on his malicious prosecution claim also would call into question the validity of his criminal conviction for engaging in deadly conduct.

Because allowing Plaintiff's § 1983 claims to proceed would implicate the validity of Plaintiff's deadly conduct conviction all of Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).   The court recommends that Plaintiff's case be dismissed in its entirety with prejudice to the claims being asserted again until the *Heck* conditions are met.   *See DeLeon*, 488 F.3d at 657 (stating preferred language for dismissal order in *Heck* cases).

## B. Defendants' alternative grounds for dismissal

### 1. Plaintiff's malicious prosecution/wrongful detention claim is barred by *Castellano v. Fragozo*.

The Constitution does not guarantee a right to be free from malicious prosecution. *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003).   Only claims alleging a separate, legally cognizable deprivation of a constitutional right can be asserted under 42 U.S.C. § 1983.[3]   *Id.*   A plaintiff cannot state a cognizable § 1983 claim based solely on the fact that charges were filed against him.   *Id.* at 953 ("[C]ausing charges to be filed without probable cause will not without more violate the constitution. So defined, the assertion of malicious prosecution states no constitutional claim."); *see also Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004) ("To the extent that Shields complains of the fact that charges were filed

---

[3] Plaintiff asserts only a federal claim pursuant to § 1983, he does not assert a state law tort claim.

8

against him, he has not stated a cognizable federal claim." (citing *Castellano*)); *Danna v. Purgerson*, 760 F. App'x 275, 279 (5th Cir. 2019) ("[A] constitutional malicious-prosecution claim must be grounded in some rights deprivation separate from the prosecution itself—pretrial detention, for example.").

Plaintiff's Complaint alleges that "[d]ue to Deputy Mook's false statements [Plaintiff] was charged with felony aggravated assault of a public servant and had to hire a lawyer at great expense." Dkt. at ¶ 12. More specifically, Plaintiff alleges that "Mook gave material falsehoods in his incident report and statements about plaintiff's location when plaintiff was sho[t] as well as how Mook was positioned during the shooting." *Id.* at ¶ 116. In response to the motion to dismiss Plaintiff' states:

> Plaintiff does not bring a "freestanding" malicious prosecution claim. His lawsuit clearly states this liberty interests were violated when he had to show up at court to defend himself and stand trial on the false felony charges of aggravated assault upon a public servant. If Llamas would have been offered to plea to the charge he was actually convicted of – misdemeanor deadly conduct – he would have taken it. It was only by the false felony charge that he had to hire a criminal defense attorney at great expenses and show up many times at court and then go to trial.

Dkt. 14 at 26. These allegations and arguments do not articulate a cognizable malicious prosecution claim under § 1983. *See Castellano,* 352 F.3d at 953 (causing charges to be filed against someone does not violate the constitution).

Neither does Plaintiff's assertion that he would have accepted an agreement to plead guilty to misdemeanor deadly conduct had one been offered to him state a claim under § 1983. Even if Plaintiff were allowed to amend his Complaint to include this allegation, the amendment would be futile because charging decisions and plea negotiations are

matters of prosecutorial discretion, not constitutional rights. *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" (citation omitted)); *Berry v. Epps*, 230 F. App'x 386, 397 (5th Cir. 2007) ("Berry does *not* have a constitutional right to plea bargain." (emphasis in original)).

For these reasons, the court recommends that Plaintiff's § 1983 claim for malicious prosecution be dismissed with prejudice based on *Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003) ("[C]ausing charges to be filed without probable cause will not without more violate the constitution.").

### 2.  Plaintiff's claims against Harris County are barred by *Monell v. Dep't of Soc. Servs. Of City of New York*.

To establish a claim under 42 U.S.C. § 1983 against Harris County, Plaintiff must show that the County had a policy or custom that was the "moving force" behind the violation of his constitutional rights. *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 691 (1978). Because no respondeat superior liability exists under § 1983 Plaintiff cannot demonstrate a § 1983 claim simply by showing that a County employee violated his rights. *Id.* Rather, the County itself must have caused the violation of Plaintiff's rights through a policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). To state a § 1983 claim against the County, Plaintiff must identify (a) a policymaker, (b) an official policy or custom, and (c) a violation of constitutional rights which the official policy or custom was the moving force behind. *Id.*

Plaintiff has failed to identify an official policy or custom that was the moving force behind a violation of his constitutional rights. Plaintiff argues that he has satisfied *Monell* by "set[ting] forth dozens and dozens of improper shootings by Harris County and Harris County's failure to discipline or retrain the officers[,]" and "alleg[ing] the U.S. Department of Justice has found a pattern of excessive force by Harris County." Dkt. 14 at 27. While the Amended Complaint does describe many incidents involving shootings or the use of force by Harris County Sheriff's Officers over more than a 12-year period, Plaintiff has failed to allege any facts showing the listed incidents are similar to this case or even that the incidents have been found to involve unreasonable or excessive force. Dkt. 10 at ¶¶ 20-111. Some of the listed incidents merely state that an individual was shot, injured or killed by a Harris County Sheriff's Officer. ¶¶ 23-45. The "improper shootings" listed in Plaintiff's Amended Complaint are nothing more than a description of dozens of cases involving Harris County Sheriff's Officers in which they shot, killed or injured individuals. The mere listing of these incidents does not allege a custom, practice or policy that was the moving force behind the March 26, 2017 shooting incident involving Plaintiff and Mook.

Plaintiff's Amended Complaint also cites the complaint in *Bartee v. Harris Cty.*, Case No. 4:16-cv-02944, filed in the United States District Court for the Southern District of Texas, as evidence of custom, policy and practice by Harris County. Dkt. 10 at n.3. The cited case, however, involves a § 1983 claim by a person who was severely beaten while being held at the Harris County Jail, not by an individual engaged in deadly conduct. Likewise, another case cited by Plaintiff as proof of a pattern of excessive force in Harris County also involves an incident at the Harris County Jail—an incident in which a pre-trial

detainee died when bodily force was used to restrain and transport him.  *See Salcido v. Harris County, Tex.,* Civil Action No. H-15-2155, 2018 WL 6618407 (S.D. Tex. Dec. 18, 2018) (cited at Dkt. 14 at 27).  Moreover, there was summary judgment evidence before the *Salcido* court that "Harris County trained its officers to ignore calls for help and expressions of inability to breath made by restrained detainees who were not "entirely incapacitated." *Id.* at *8.  Neither case is factually similar to this case because both involve detainees already in custody at the Harris County Jail.  Neither case supports finding that allegations of the type in Plaintiff's Amended Complaint are sufficient to establish a pattern or practice that was the motivating force behind the shooting in this case.

Plaintiff also cites *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 169 (5th Cir. 1985) as support for his argument that *Monell* does not require dismissal of his claims. Plaintiff appears to cite *Grandstaff* for the contention that the incidents he cites support a finding that Harris County has failed to correct officer behavior and has inadequately trained officers in the proper use of deadly force.  Dkt. 14 at 27.  Plaintiff further argues that *Grandstaff* stands for the proposition that inadequate training is a conscious choice that supports municipal liability in this case.  *Id.  Grandstaff* involved the shooting and death of an *innocent third party* and is inapposite to the facts of Plaintiff's case.

In *Grandstaff*, a group of police officers mistook an *innocent third party* for the fugitive they had been pursuing, fired on him, and killed him.  The Fifth Circuit recognized that in some cases "prior incidents of abusive police conduct tend to prove a pattern or custom and the accession to that custom by the policymaker." *Grandstaff*, 767 F.2d at 171. The Fifth Circuit noted that under existing Supreme Court requirements, a policy--such as

inadequate training--that is not in and of itself unconstitutional, must be accompanied by "considerable proof that that the policy was causally related to the constitutional deprivation." *Id.* at 169. Again discussing the inadequate training policy, the Fifth Circuit stated: a "conscious lack of concern whether the police force is well trained or poorly trained[,]" may not be enough to causally link a policy of inadequate training to a constitutional violation. *Id.* at 170. The court then went on to address the policy of "dangerous recklessness" and held that "[w]here police officers know at the time they act that their use of deadly force in conscious disregard of the rights and safety of *innocent third parties* will meet the approval of city policymakers, the affirmative link/moving force requirement is satisfied." *Id.* at 170 (emphasis added). Finally, the court upheld the jury verdict finding municipal liability, noting the evidence demonstrated that city policymakers ratified or approved the officers' use of deadly force in conscious disregard of the safety of *innocent third parties* because it failed to reprimand or discharge any officer, admit error, or change any policy. *Id.* at 171 ("the disposition of the policymaker may be inferred from his conduct after the events of that night.").

*Grandstaff* does not rescue Plaintiff's claims from dismissal under *Monell.* It remains the law in the Fifth Circuit that the unconstitutional conduct at issue must be "directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski*, 273 F.3d at 578. The Fifth Circuit noted in *Piotrowski* that some courts have "mis-read *Grandstaff* as suggesting that municipal liability may be imposed for individual unconstitutional acts of lower-lever employees," but pointed out that *Grandstaff* affirmed municipal liability because the sheriff's actions after the shooting

essentially ratified the officers use of excessive force. *Id.* at n.18. "*Grandstaff* has not enjoyed wide application in this Circuit" and its application has been limited to "extreme factual situations." *Snyder v. Trepagnier*, 142 F.3d 791, 797-98 (5th Cir. 1998) (claim by plaintiff who was shot in the back while fleeing police pursuit did not involve "extraordinary factual circumstances"); *Barkley v. Dillard Dept. Stores, Inc.*, 277 F. App'x 406, 413 (5th Cir. 2008) (declining to apply *Grandstaff* to incident in which an officer was involved in shooting a fleeing suspect). This case does not present the sort of extreme factual circumstances that warrant inferring acquiescence by the policymaker in the allegedly unconstitutional actions of Mook.

### 3.  Deputy Mook is protected from suit by qualified immunity.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489-90 (5th Cir. 2001). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

The qualified immunity inquiry has two prongs: (1) whether the officers' conduct violated a constitutional right; and (2) whether that right was clearly established. *Pearson v. Callahan,* 129 S. Ct. 808, 818 (2009). The court may exercise discretion in deciding which of the two prongs should be addressed first in light of the circumstances in the particular case at hand. *Id.*; *see also Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019)

(The court "can decide one question or both.").  When the defense of qualified immunity is raised in a motion to dismiss, the court must determine whether the plaintiff has alleged facts that, if proved, would defeat a claim of immunity. *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018). "The purpose of requiring such allegations is, of course, to permit the trial court, and our court on review, if necessary, to implement a qualified immunity defense at the earliest possible stage of litigation."  *Id.*

Plaintiff's allegations, if proved, would not show that Mook violated a constitutional right, or that the right was clearly established.  Plaintiff has alleged that he suffered an injury as a result of Mook's use of force; that the force was excessive to the need; and that the force was objectively unreasonable.  *See* Dkt. 10 at ¶¶ 113-14.  But it is not enough for Plaintiff to allege that Mook violated his right to be free from excessive force.  While as a general proposition the right to be free from excessive force is clearly established, "the dispositive question is whether the violative nature of *particular* conduct is clearly established." *Morrow*, 917 F.3d at 875 (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).  Plaintiff also pled that he was convicted of misdemeanor deadly conduct in connection with the incident. *Id.* at ¶ 12.  A jury has found that Plaintiff's conduct put Mook "in imminent danger of serious bodily injury."  Thus, Plaintiff has not plead a plausible claim that the particular conduct of Mook violated a constitutional right, much less a clearly established one. *See Mullenix*, 136 S. Ct. at 309 ("In *Brosseau* [*v. Haugen*, 543 U.S. 194, 197] itself, the Court held that an officer did not violate clearly established law when she shot a fleeing suspect out of fear that he endangered 'other officers on foot who [she] *believed* were in the immediate area' . . . The Court has thus never found the use

of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone to be a basis for denying qualified immunity."). The Court recommends that Mook's motion to dismiss based on qualified immunity be granted.

## IV. Conclusion and Recommendation

For the reasons discussed above, the court RECOMMENDS that the Motions to Dismiss of Harris County (Dkt. 12) and Deputy Mook (Dkt. 13) be GRANTED. To the extent Plaintiff's claims are dismissed pursuant to *Heck v. Humphrey*, the Court recommends they be dismissed with prejudice to reinstatement unless and until the *Heck* conditions are met. To the extent the claims are dismissed pursuant to the alternative bases identified in this Memorandum, the Court recommends the claims be dismissed with prejudice.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on November 22, 2019, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge